SALLY W. HARMELING, WSBA No. 49457
ROBERT R. SIDERIUS, WSBA No. 15551
PETER A. SPADONI, WSBA No. 11390
Jeffers, Danielson, Sonn & Aylward, P.S.
P.O. Box 1688
Wenatchee, WA  98807-1688
(509) 662-3685 / (509) 662-2452 FAX

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EVANS FRUIT CO., INC., a Washington Corporation; WGE HOLDINGS, LLC, a Washington Limited Liability Company; McDOUGALL FAMILY FARMING, INC., a Washington Corporation; McDOUGALL & SONS, INC., a Washington Corporation; DOUBLE S ORCHARDS, LLC, a Washington Limited Liability Company; COLUMBIA FRUIT PACKERS, INC., a Washington Corporation; COLUMBIA ORCHARD MANAGEMENT, INC., a Washington Corporation; and WADE & WADE, LLC, a Washington Limited Liability Company, | NO. 1:19-cv-03202-SMJ<br><br>DECLARATION OF STEPHEN G. BRONARS, Ph.D. |
| Plaintiffs, | |
| vs. | |
| UNITED STATES DEPARTMENT OF LABOR;<br><br>PATRICK PIZZELLA, in his official capacity as Acting United States Secretary of Labor; | |

DECLARATION OF STEPHEN G. BRONARS,
Ph.D.
PAGE 1

Declaration of Stephen Bronars Signed.docx

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

JOHN P. PALLASCH, in his official capacity as Assistant Secretary of Labor, Employment & Training Administration, United States Department of Labor;

CHERYL M. STANTON, in her official capacity as Administrator of the Wage & Hour Division, United States Department of Labor;

Defendants.

STEPHEN G. BRONARS, Ph.D., pursuant to RCW 9A.72.085, states and declares:

1.  I am over 18 years old and make this declaration based upon my personal knowledge. If called upon to do so, I could and would testify competently as a witness to the matters stated herein.

2.  I am a Partner with Edgeworth Economics, a consulting firm specializing in economic and statistics research. I worked previously at Welch Consulting for more than eight years and prior to that I was the Leroy Denman Jr. Regents Professor of Economics at the University of Texas at Austin. I have submitted expert reports and testified on statistics and analysis of class certification and collective action topics in labor and employment matters, on damages and liability in discrimination cases, and on sampling and statistical analysis in other labor and employment matters, including the determination of prevailing wage rates. I also work extensively on a consulting basis to analyze data relating to labor and employment issues.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 2
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

3.     I earned a PhD in Economics from the University of Chicago. I have published numerous peer reviewed papers on labor economics, econometrics and applied statistics in academic journals. I have also written articles for trade publications on topics related to the statistical analysis of human resource data.  My firm is being compensated at $475 per hour for my time. My compensation is not contingent on my opinions or the outcome of the case. A copy of my curriculum vitae, which includes a list of my publications and a list of my recent prior testimony, is attached as **Exhibit 1**.

4.     I have been asked by counsel for Plaintiffs to assess whether the Washington State Employment Security Department's ("ESD") estimate of a prevailing wage rate ("PWR") of $16/hour for workers employed in high density apple harvesting and high density apple harvesting-color-picking is based on a valid and reliable statistical methodology, and whether the sampling methods used by ESD in their determination of this PWR rate were sound.  In preparation for this declaration, I reviewed ESD's 2018 Agricultural Peak Employment Wage and Practices Survey Results ("ESD's 2018 Survey"), Plaintiffs' Complaint, declarations of Washington State apple growers produced in this litigation, and other documents filed in this litigation. I also relied upon my own experience and knowledge of labor economics, econometrics and statistics, and relevant books and articles. A list of materials which I relied upon to develop my opinion is attached as **Exhibit 2**. If additional information is provided to me in this litigation, I will analyze it, consider it as part of my opinions, and supplement this declaration as appropriate.

**JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

1    5.    ESD claims that their 2018 Survey is based on information from at least 15%

2    of the population of workers employed in high density apple harvesting and high density

3    apple harvesting-color-picking, and therefore satisfies the sample size requirements of the

4    United States Department of Labor's ("DOL") Employment and Training Administration

5    ("ETA") Handbook 385.  My review of ESD's data and methods indicates that ESD's 2018

6    Survey has an inadequate sample size that does not comply with ETA Handbook 385.

7    Consequently, the resulting $16/hour PWRs for high density apple harvesting and high

8    density apple harvesting-color-picking are based on an inadequate sample that does not

9    comply with DOL regulations. In addition, my review of declarations by Washington State

10   apple growers representing more than 67% of the tonnage of Washington's 2018 apple

11   industry indicates that it is exceedingly unlikely that the median wage for high density

12   apple harvesting was as high as $16/hour or that 40% of apple growers paid exactly

13   $16/hour in 2018.  ESD's methodology is based on an inadequate and unreliable survey

14   that does not meet DOL survey requirements, relies upon fundamentally flawed statistical

15   methods, and results in estimated PWRs for high density apple harvesting and high density

16   apple harvesting-color-picking that are inconsistent with labor market data.

17   6.    According to ESD's 2018 Survey Results document, both the number of

18   growers with high density apple orchards and the number of workers employed in high

19   density apple harvesting and high density apple-harvesting-color-picking are *unknown* to

20

DECLARATION OF STEPHEN G. BRONARS,
Ph.D.
PAGE 4
Declaration of Stephen Bronars Signed.docx

**JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

ESD.[1]  This means that a determination of whether ESD's 2018 Survey satisfies the 15% sample size requirement of ETA Handbook 385 must be based on a comparison of the actual number of high density apple harvesting and high density apple harvesting-color-picking workers covered by the responses to ESD's 2018 Survey and ESD's educated guess as to the number of workers in the state of Washington employed in these tasks in 2018.

7.     ESD's method of demonstrating that their 2018 Survey satisfies the minimum sample size requirement of ETA Handbook 385 is fundamentally flawed.  As I explain below, ESD's process to obtain a rough estimate of the number of workers employed in these tasks in 2018 begins with a statistical methodology that provides only a "lower bound" estimate of the number of growers that employ apple harvesting workers.[2]  Thus, the reported 1,210 employers of apple harvesting workers in Washington State in 2018 in Figure 1 of ESD's 2018 Survey Results is an estimate of a "lower bound" of the number of employers. In other words, ESD is merely disclosing in Figure 1 of its 2018 Survey Report that it has estimated there are at least 1,210 employers of apple harvesting workers in Washington in 2018.

---

[1] Plaintiffs' Complaint, (ECF No. 1, p. 105 and 126).

[2] Rivest, Louis-Paul, and Sophie Baillargeon. "Applications and extensions of Chao's moment estimator for the size of a closed population" (2007) and Baillargeon, Sophie, and Louis-Paul Rivest. "Rcapture: loglinear models for capture-recapture in R" (2007).

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 5
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

8.     Because the number of growers employing apple harvesting workers could be substantially higher than the estimates reported by ESD, the sample coverage figures reported by ESD should be viewed as a best-case scenario. This means, for example, that when ESD reports that its 2018 Survey includes wage information for 1,745 (14.67%) of the 11,895 (estimated) high density apple harvesting workers in the state, and 1,200 (15.53%) of the 7,728 (estimated) high density apple harvesting-color-picking workers in the state,[3] the DOL should view this as an indication that the survey covers no more than 14.67 to 15.53% of the relevant population of workers.

9.     ESD's 2018 Survey Results indicate that the survey includes responses from 340 growers who employed apple harvesting workers and 175 growers who employed apple harvesting-color-picking workers.[4]   A relatively small percentage of survey respondents who employ apple harvesting workers were categorized as employing high density apple harvesting workers.  ESD's sample includes only 72 growers (about 21% of the 340 sampled employers of apple harvesting workers) that employed only 1,745 high density apple harvesting workers. ESD's sample also includes only 48 growers (about 27% of the 175 sampled employers of apple harvesting-color-picking workers) that employed 1,200 only high density apple harvesting-color-picking workers. ESD does not report an

---

[3] ESD 2018 Survey Report at p. 3.

[4] ESD 2018 Survey Report:  Supplemental Attachment p. 5 of Figure 1.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 6
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

estimate of how the samples of 72 and 48 employers, respectively, compare to estimates of the total number of employers in the state that employ either high density apple harvesting workers or apple harvesting-color-picking workers. These small sample sizes, however, inevitably result in imprecise and unreliable estimates of wages for high density apple harvesting work.

10. The small number of survey respondents employing high density apple harvesting workers (72 or 48, depending on the specific task) indicates that ESD cannot precisely estimate the total number of employers of high density apple harvesting workers. To understand how difficult it is to obtain precise estimates of the total number of growers based on small samples, consider ESD's estimates of the number of employers of apple harvesting workers by type of apple. For example, ESD estimates there are 191 employers that grow Braeburn apples,[5] but given the sample size of Braeburn apple growers in the sample, ESD's confidence interval for the total number of Braeburn growers is anywhere from 93 to 548 employers.[6] This means that ESD cannot dispute the possibility that there are 186 percent more employers growing Braeburn apples than their reported population

---

[5] ESD 2018 Survey Report at p. 2, Figure 1.

[6] Because ESD estimates 191 employers grow Braeburn apples and 1,210 employers for all apple harvesting, it follows that ESD estimates that 15.8% of apple growers have some acreage devoted to Braeburn apples.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 7
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688

estimate. Similarly, ESD's estimate of the number of growers that employ high density apple harvesting workers is also based on a small sample. This means that ESD's estimate of the fraction of high density apple growers covered by their sample is unreliable for the purposes of demonstrating that it has a large enough sample to satisfy the DOL requirements.

11.     ESD estimates that there were 1,745 high density apple harvesting workers and 1,200 high density apple harvesting-color-picking workers in Washington in 2018.[7] ESD did not report a 95% confidence interval for these estimated workers (unlike it did for the estimated employers in Figure 1 of ESD's 2018 Survey Report), so it is unclear how precise this estimate is.[8] If large employers disproportionately did not respond to the ESD

---

[7] ESD 2018 Survey Report at p. 3, Figure 2.

[8] A 95% confidence interval is a standard way of summarizing the margin of error and degree of uncertainty associated with an estimation procedure. A properly measured 95% confidence interval for apple harvesting workers is calibrated so that if the ESD survey was repeated many times, the confidence interval would be just large enough to contain the true (but unknown) number of apple harvesting workers in the population. Estimates based on smaller sample sizes consequently have much wider confidence intervals; this is because repetition of an estimation procedure based on small sample sizes can often yield substantially different results.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 8
Declaration of Stephen Bronars Signed.docx

survey, the fraction of workers included in the ESD survey will be well below the 15% requirement of ETA Handbook 385.

12. ESD's estimate of the number of high density apple growers is based on a capture-recapture statistical methodology that was developed for estimating the size of animal populations. The methodology has been adapted and applied in the health sciences and social sciences for studying the size of human populations, but its applicability for human populations is often questioned.[9] ESD uses survey results from 2015, 2017, and 2018 to estimate the number of high density apple growers in 2018.

13. ESD attempted to survey 1,612 agricultural employers and eventually obtained responses from 72 high density apple growers that employed workers for

_____

[9] The capture-recapture method is described in Sharon L. Lohr (1999) Sampling Design and Analysis, Second Edition (Duxbury Press, Pacific Grove, California), Kate Tilling (2001), "Capture-recapture methods—useful or misleading?", *International Journal of Epidemiology*, Volume 30, Issue 1, February 2001, Richard Neugebauer and Janet Wittes (1994), "Annotation: Voluntary and Involuntary Capture-Recapture Samples-Problems in the Estimation of Hidden and Elusive Populations", *American Journal of Public Health*, July 1994. Vol. 84. No. 7, and Papoz L., Balkau B. , Lellouch J. (1996), and "Case Counting in Epidemiology: Limitations of Methods Based on Multiple Data Sources", *International Journal of Epidemiology*, Vol 25, No.3.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 9
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688

harvesting tasks and 48 high density apple growers that employed workers for harvesting-color-picking tasks.[10]  Prior to receiving survey results, ESD does not know how many of the 1,612 agricultural employers are high density apples growers, nor does it know how many employees work in high density apple harvesting.

14.    The capture-recapture method uses multiple attempts to obtain survey responses from agricultural establishments to estimate population size in the same way that biologists would estimate the size of an animal population by capturing a sample of animals, releasing them into the population, and then tabulating the number of animals recaptured during a second sampling event.  In the simplest version of this method, for example, suppose that ESD sent surveys to all agricultural establishments and obtained responses from 30 high density apple growers. In a survey in the following year, suppose ESD obtained responses from 28 high density apple growers, including four in the original survey. Since the second year of the survey identified that one out of seven respondents were included in the previous year's survey (recaptured), the capture-recapture method assumes that the survey captures about one in seven high density apple growers. This one in seven factor would then be used by ESD to extrapolate how many high density apple growers were present in the population of agricultural establishments. ESD has adapted

--------

[10] ESD 2018 Survey Report page 1 and Figure 2 of the Supplemental Attachment to the ESD 2018 Survey Report.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 10
Declaration of Stephen Bronars Signed.docx

this method by allowing capture (initial survey response rates) and recapture (survey propensities in subsequent years) rates to vary by characteristics of the agricultural establishment.

15.     The capture-recapture method may result in reliable results for estimating animal populations because one can reasonably assume all (or most) animals respond similarly to a trap that is set. Thus, if the same animals who were tagged were recaptured, it is reasonable to assume the size of the animal population is relatively small; whereas, if few tagged animals are recaptured, it is reasonable to assume the size of the animal population is much larger.  However, application of the capture-recapture method to survey responses, non-responses, and follow-up responses among employers (who are making complex business decisions in choosing whether or not to respond, and not simply acting out of an instinct to survive) can lead to considerable error in population estimates.[11]  This is one reason why Figure 1 of ESD's 2018 Survey Results indicates that the 95% confidence interval for the number of Braeburn apple growers is between 93 and 548.

16.     ESD estimates the total number of high density apple harvesting and

---

[11] ESD notes that the capture-recapture method assumes that entry and exit rates of high density apple growers are low, and that the surveys are administered over a relatively short period of time. It is unclear that any of these requirements apply.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 11
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

harvesting-color-picking workers using a method known as "raking."[12] "Raking" is a procedure that is applied when the number of workers per employer varies, researchers have a definitive census count of the number of employers of each size in the population, and the sample of employers does not correspond proportionately to the known population of employers of each size.[13] In these situations, raking can be used to adjust the sampling weights to add up to the known totals for each group. ESD used raking after assuming that their (unreported) estimate of high density apple growers is an actual known count of employers from a census. Raking based on estimates from a capture-recapture method, rather than actual census counts, is unconventional and unreliable. ESD's combination of statistical methods leads to inaccurate and unreliable estimates of the number of workers employed in harvesting and harvesting-color-picking tasks by high density apple growers and their corresponding wages.

17. The population of high density apple growers could be substantially underestimated by ESD if many large employers failed to respond to the survey and were

---

[12] ESD 2018 Survey Responses at p. 3.

[13] Raking is described in Sharon L. Lohr (1999) Sampling Design and Analysis, Second Edition (Duxbury Press, Pacific Grove, California), p. 344, and in Michael P. Battaglia, David Izrael, David C. Hoaglin, and Marvin R. Frankel, "Tips and Tricks for Raking Survey Data (aka Sample Balancing)," American Association for Public Opinion Research.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 12
Declaration of Stephen Bronars Signed.docx

never included in the calculations. If these large employers have a low propensity to respond to the survey, and in fact failed to respond to the survey, ESD's estimate of the total number of high density apple growers is likely to be too low, and the PWRs based on the survey are inaccurate and unrepresentative of the population of growers and workers.

18.     Further indication that the ESD survey is fundamentally flawed and unreliable is that it is exceedingly unlikely that either 40% of apple growers paid harvesting workers a wage of $16/hour or that the median wage was $16/hour in 2018.  The $16 PWR produced by the ESD survey is exceedingly implausible based on my review of Plaintiffs' Complaint and the declarations of apple growers submitted as part of this litigation. The 69 apple growers either described in the Complaint or that submitted declarations account for about 67% of the 2018 apple harvest tonnage in Washington.[14]  Employers who paid $16/hour accounted for less than one tenth of 1% of Washington's apple tonnage, and employers who paid over $14.12 accounted for less than 7% of Washington's apple tonnage.[15]

19.     The impossibility of a PWR of $16/hour follows from simple arithmetic. About two thirds of Washington's apple production in 2018 is attributable to growers that paid apple harvesting wages of $15 or less. The only way that 40% of harvesting workers

---

[14] Declaration of Sally W. Harmeling.

[15] Employers that accounted for less than one half of 1% of Washington's apple tonnage paid a range of wages up to, but not exceeding $15 per hour.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 13
Declaration of Stephen Bronars Signed.docx

**JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

could have been paid $16/hour in 2018, or that the median wage could have been $16/hour in 2018, is if: (1) the majority of apple harvesting workers were employed by growers that accounted for only about one third of apple tonnage, and (2) these growers paid wage rates well above the wage rates paid by growers that submitted declarations or that were described in the Complaint. This confluence of events is exceedingly unlikely. A more plausible explanation is that ESD's survey covered a minority of both apple growers and apple harvesting workers that accounted for a minority of Washington's apple tonnage. Put simply, a median wage of $16/hour in a sample of inadequate size and coverage is insufficient for the DOL to determine that the PWR is $16/hour.[16]

20.     According to the United States Department of Agriculture's ("USDA") 2017 Farm Labor Survey, the Adverse Effect Wage Rate for high density apple harvesting workers in Washington in 2018 was $14.12 per hour.  The USDA 2018 Farm Labor Survey indicates that the Adverse Effect Wage Rate for high density apple harvesting workers in Washington in 2019 would be $15.03. The ESD adjustment for a PWR of $16/hour would mean that the required wage for H-2A high density apple harvesting workers would increase by 13.3% in a single year. Given this unusually high increase in the required wage rate for these tasks, DOL should have examined the underlying data that led to ESD's

---

[16] The other possibility is that 40% of workers in a sample of inadequate size and coverage were paid $16/hour.

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 14
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

estimates of the number of high density apple growers, high density apple harvesting workers, and high density apple harvesting-color-picking workers. An examination of the sample data for each high density apple grower that responded to ESD's survey could have indicated whether some of the largest apple growers were omitted from the analysis. Such an examination of the actual sample data could help determine whether ESD's claim that at least 15% of high density apple harvesting workers were included in the survey is accurate and could also be used to understand the potential errors in the estimated PWRs.

21.     ESD's determination of $16/hour PWRs for high density apple harvesting and apple harvesting-color-picking workers is the result of a survey with an inadequate sample size that does not comply with ETA's Handbook 385. The small sample size for this survey means that the $16/hour PWRs are likely the result of statistical noise. The $16 hour PWRs for high density apple harvesting and high density apple harvesting-color-picking workers are inaccurate because: (1) the declarations of many apple growers indicate that the median wage for high density apple harvesting workers could not be as high as $16/hour, (2) ESD used unconventional and unreliable methods to estimate the number of high density apple growers, high density apple harvesting workers, and high density apple harvesting-color-picking workers, and (3) the average size of high density apple growers who responded to ESD's survey is quite small indicating that survey nonresponses by large apple growers employers caused ESD to substantially overstate the fraction of apple harvesting workers covered by its survey, and (4) the ESD survey has resulted unusually large increase in

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 15
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

estimated apple harvesting wages in a single year. There is no reason for the DOL to protect an estimated high density apple harvesting wage rate that is simply the result of statistical noise.

22.     I declare under penalty of perjury under the laws of the State of Washington that the foregoing/attached is true and correct.

Signature:     _Stephen G. Bronars_

Printed name:     Stephen G. Bronars

Date:     September 27, 2019

DECLARATION OF STEPHEN G. BRONARS, Ph.D.
PAGE 16
Declaration of Stephen Bronars Signed.docx

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688

# EXHIBIT 1

## CURRICULUM VITA OF STEPHEN G. BRONARS



1111 19th Street, NW
Suite 200
Washington, DC 20036
(202) 580-7777
sbronars@edgewortheconomics.com

August 2019

# Stephen G. Bronars, Ph.D.
## Partner

Dr. Bronars is an economics and statistical expert with extensive experience in labor and employment matters and has also consulted on cases involving alleged violations of the Fair Credit Reporting Act and the False Claims Act. In addition, in both consulting work and expert testimony, he has analyzed issues relating to class certification, sampling, statistical testing, and the estimate of economic damages. His work as both a testifying expert and a consultant includes the rigorous statistical analysis of large, complex data sets as he assists clients facing allegations of discrimination in hiring, pay, promotions, performance evaluations and reductions in force. He has extensive experience in analyzing the use of criminal background checks in hiring decisions, the determination of prevailing wages, and the impact of visa programs on the wages of domestic workers. He has experience analyzing a variety of wage and hour claims under federal and state laws and has provided guidance on statistical issues in a variety of contexts.

As an expert witness, Dr. Bronars analyzes data and testifies on allegations of employment discrimination, wage and hour violations, economic damages, and class action topics involving commonality, typicality, and issues related to manageability and the use of sampling in extrapolating economic damages to an entire class.

Dr. Bronars consults with Fortune 500 clients and universities on a variety of labor and employment issues including diversity initiatives, monitoring pay equity, as well as equity in performance evaluations, hiring, promotion and retention rates. Dr. Bronars often communicates the results of his analyses to management and legal counsel. In addition, he has worked, as a consultant, on issues related to immigration policy and temporary work visas and in 2016 testified before a Senate Subcommittee on the economic impact of the H-2B Visa Program.

His academic research focuses on the statistical analysis of a wide variety of labor topics including discrimination, the economic impact of immigration, collective bargaining, and statistical models of pay determination. He has published in many peer-reviewed journals including: *the American Economic Review, the Journal of Political Economy, the Quarterly Journal of Economics, Econometrica, the Journal of Econometrics, the Review of Economics and Statistics,* and *the Journal of Labor Economics.* He frequently writes and speaks on the economic and statistical analysis of discrimination, class certification issues, and wage and hour topics.

Dr. Bronars received his PhD and MA degrees in Economics from the University of Chicago and his BA in Economics from the University of Illinois, Urbana-Champaign. Prior to his employment at Edgeworth, Dr. Bronars was the Leroy G. Denman Jr. Professor of Economics at the University of Texas at Austin, and has held academic positions at the University of California-Santa Barbara, Yale University and the Wharton School of the University of Pennsylvania. He has served on the Economics Advisory Board of the National Science Foundation and was an American Statistical Association-National Science Foundation Visiting Research Fellow at the Bureau of Labor Statistics.

University of Chicago
Ph.D., Economics, 1983
M.A., Economics, 1980
University of Illinois, Urbana-Champaign
B.A., Economics, 1978

## C U R R E N T   E M P L O Y M E N T

Edgeworth Economics, Washington, DC
May 2015-present, Partner

## E M P L O Y M E N T   H I S T O R Y

Welch Consulting, Washington, DC
2010 - 2015 Senior Economist, Washington D.C.
2006 - 2010 Senior Economist, Bryan TX

Georgetown University, Washington, D.C.
2010-2013 Adjunct Professor

University of Texas at Austin
2003-2009 Leroy G. Denman Jr. Regents Professor of Economics
2000-2003 Chairman, Department of Economics
1996-2000 Professor, Department of Economics
1992-1996 Associate Professor, Department of Economics

The Wharton School, University of Pennsylvania
1992 Visiting Associate Professor of Economics and Public Policy

University of California – Santa Barbara
1990-1992 Associate Professor
1986-1990 Assistant Professor

Yale University
1985-1986 Visiting Assistant Professor

Texas A&M University, College Station TX
1982-1985 Assistant Professor

American Statistical Association/National Science Foundation/Bureau of Labor Statistics
1990 Senior Research Fellow

National Science Foundation Economics Advisory Panel
1999-2001 Member

American Bar Association, Member
Labor & Employment Section
Litigation Section: Employment & Labor Relations Committee

American Conference Institute, Continuing Legal Education, Speaker

Bridgeport, Continuing Legal Education, Speaker

Research Grant from the U.S. Department of Health and Human Services, "Job Selection and the Incidence of Unemployment Risk in the U.S. Labor Market", 1983.
Research Grant from the U.S. Department of Health and Human Services, "Demand Variability, Structural Changes in the Labor Market, and the Growth of Part-Time Employment", 1984, with D.R. Deere.
Research Grant from the U.S. Department of Commerce, "Self-Employment in the Labor Market: An Analysis of Racial and Ethnic Differences", 1986, with G.J. Borjas.
Research Grant from the Sloan Foundation, "Immigration and the Family", 1987, with G.J. Borjas.
Research Grant from the U.S. Department of Labor, "Self-Selection and Internal Migration", 1987, with G.J. Borjas and S.J. Trejo.
Principal Investigator, American Statistical Association/National Science Foundation/Bureau of Labor Statistics Fellowship Program, "Employment, Hours, and Weekly Wage Variation at the Establishment Level", 1990.
Research Grant from the National Institutes of Health, "Early Childbearing, Poverty, and Welfare Incentives", 1992, with J. Grogger.
Research Grant from the U.S. Department of Labor, "Incentive Pay, Earnings, and Information: Evidence from the National Longitudinal Survey of Youth", 1993, with C. Moore.

"DOL's Overtime Rules: What to Expect for Highly Paid Workers," *Law360*, April 15, 2019 (with D. Foster).

"A Wage-Analysis Primer for Antitrust Attorneys: Part 2," *Law360*, May 23, 2018 (with D. Foster).

"A Wage-Analysis Primer for Antitrust Attorneys: Part 1," *Law360*, May 22, 2018 (with D. Foster).

"DOL Salary Projections May Rest on Inaccurate Assumptions," *Law360*, June 16, 2016 (with D. Foster).

"EEO-1 Pay Reports: Rulemaking in the Absence of Evidence," *Law360*, May 11, 2016 (with A. King and E. Blom).

"How Estimates Can Miss the Mark on Age Discrimination," *Law360*, October 8, 2015 (with N. Woods).

"Flawed Logic of DOL's Proposed White Collar Salary Test," *Law360*, August 25, 2015 (with D. Foster and N. Woods).

"Approaches to Hourly Rates Under DOL White Collar Rules," *Law360*, August 14, 2015 (with D. Foster and N. Woods).

"The Problems in CFPB Process for Identifying Race," *Law360*, July 7, 2015 (with C. Fields and C. Craig).

"Gender Pay Gap: A Problem for Contractors and Feds," *Law360*, April 23, 2014 (with A. King).

"Legal Industry Trends: Lawyers Salaries and Job Growth," *Law360*, October 22, 2012

"Credit Checks and Hiring," *Law360*, February 8, 2011

ACADEMIC PUBLICATIONS

"Passing Up Uncertainty for Attendance: The NCAA Basketball Tournament Organizers Change Direction" (with T. McFall), <u>Eastern Economic Journal</u>, Vol. 40, 2014.

"Estimates of the Return to Schooling and Ability: Evidence from Sibling Data", (with G. Oettinger), <u>Labour Economics</u>, February 2006.

"The Effect of Welfare Payments on the Marriage and Fertility Behavior of Unwed Mothers: Results from a Twins Experiment", (with J. Grogger), <u>Journal of Political Economy</u>, June 2001.

"Shareholder Wealth and Wages: Evidence for White Collar Workers", (with M. Famulari, <u>Journal of Political Economy</u>, April 2001.

"Employer Wage Differentials in the United States and Denmark", (with P. Bingley, M. Famulari, and N. Westergaard-Nielsen), in *The Creation and Analysis of Matched Employer-Employee Data*, North Holland, 1999.

"Employer-Provided Training, Wages, and Capital Investment", (with M. Famulari), in *Labor Statistics Measurement Issues*, Haltiwanger, J., Manser, M. and Topel, R., eds., University of Chicago Press, 1998.

"Criminal Deterrence, Geographic Spillovers, and Right-to-Carry Concealed Handguns", (with J. Lott), <u>American Economic Review</u>, May 1998.

"Do Campaign Contributions Alter How a Politician Votes?", (with J.R. Lott), <u>Journal of Law and Economics</u>, October 1997.

"Wage, Tenure and Wage Growth Variation Within and Across Establishments", (with M. Famulari), <u>Journal of Labor Economics </u>, April 1997.

"Unionization and Profitability: Evidence of Spillover Effects", (with D.R. Deere), <u>Journal of Political Economy,</u> December 1994.

"The Effects of Unions on Firm Behavior: An Empirical Analysis Using Firm-Level Data", (with D.R. Deere and J.S. Tracy), <u>Industrial Relations</u>, December 1994.

"The Economic Consequences of Unwed Motherhood: Using Twin Births as a Natural Experiment" (with J. Grogger), <u>American Economic Review,</u> December 1994.

"The Socioeconomic Consequences of Teenage Childbearing: Results from a Natural Experiment", (with J. Grogger), <u>Family Planning Perspectives</u>, July-August 1993.

"Union Organizing Activity, Firm Growth, and the Business Cycle", (with D.R. Deere), <u>American Economic Review</u>, March 1993.

"Unionization, Incomplete Contracting, and Capital Investment", (with D.R. Deere), <u>Journal of Business</u>, January 1993.

"Time-Series Evidence on Shirking in the House of Representatives", (with J.R. Lott), <u>Public Choice</u>, 1993, Vol. 76.

"Self-Selection and Internal Migration in the United States", (with G.J. Borjas and S.J. Trejo), <u>Journal of Urban Economics</u>, 1992, Vol. 32.

"Assimilation and the Earnings of Young Internal Migrants", (with G.J. Borjas and S.J. Trejo), <u>Review of Economics and Statistics</u>, February 1992."Immigration and the Family", (with G.J. Borjas), <u>Journal of Labor Economics</u>, April 1991.

"The Threat of Unionization, the Use of Debt, and the Preservation of Shareholder Wealth", (with D.R. Deere) <u>Quarterly Journal of Economics</u>, February, 1991.

"Union Representation Elections and Firm Profitability", (with D.R. Deere), <u>Industrial Relations</u>, Winter 1990.

"Consumer Discrimination and Self-Selection into Self-Employment", (with G.J. Borjas), <u>Journal of Political Economy</u>, June 1989.

"Why Do Workers Join Unions?: The Importance of Rent-Seeking", (with J.R. Lott), <u>Economic Inquiry</u>, April 1989.

"The Geographic Distribution of Unemployment Rates in the U.S.: A Time-Series Spatial Analysis" (with D.W. Jansen), <u>Journal of Econometrics</u>, 1987.

"The Power of Nonparametric Tests of Preference Maximization", <u>Econometrica</u>, May 1987.

"The Fair Pricing of Unemployment Insurance Premiums", <u>Journal of Business</u>, January 1985.

"Estimating the Intertemporal Elasticity of Labor Supply in a Contractual Market", <u>Economics Letters</u>, 1983.

**Peter McCullagh and Leslie Rechan v. Oracle Corporation, Siebel Systems Inc. and Siebel Systems Inc. Senior Executive Retention Plan**, Judicial Arbitration Before the Honorable John A. Flaherty, JAMS Ref. No. 1110010847, January 2010.

**Jose Gomez, Daniel Gutierrez, Donny Talbot and all others similarly situated v. Lincare Inc.,** Superior Court of the State of California, County of Orange, Case No. 05CC00109, June 2010.

**Office of Federal Contract Compliance v. United Space Alliance LLC (USA)**, DOL, OALJ, No. 2011-OFC-00002, February 2011.

**Bayou Lawn & Landscape Services, et al. v. Hilda L. Solis, et al.**, Case No.: 3:12-cv183/MCR/CJK, September 2011.

**Tyrone A. Davidson, Hugo Granada, Carlos Antonio, and Lakasha Gupton v. The Home Depot USA Inc.**, Docket No. L-10871-98, Superior Court of New Jersey, Middlesex County, September 2012.

**David and Bonnie Little, et. al. v. Hilda L. Solis, et. al.,** Case No: 3:13-cv-0004-HDM-WGC, United States District Court, District of Nevada, January 2013.

**Barrette Jasper and Darrin Cook, as an individual and on behalf of all others similarly situated, Plaintiffs, vs. C.R. England, Inc.**, Case No. 2:08-CV-5266-GW (CWx), May 2013.

**Kong J. Won v. Michael Dewayne Brown, Michael L. Chapman in his capacity as Sheriff of Loudon County, Virginia and Deputy Victor Lopreto**, Civil Action No. 12-C-92, Jefferson County, West Virginia, December 2013.

**F 3 S PARTNERSHIP, LLC** OALJ Case No: 2014 TLC 6 (ETA Case No: H-300-13336-869969)**,** and **ROBERT J. WUESTE, LLC** OALJ Case No: 2014 TLC 7 (ETA Case No: H-300-13338-454800), and **R BAR N RANCH, LLC** OALJ Case No: 2014 TLC 8 (ETA Case No: H-300-13331-795696), and **HUNTSMAN RANCH CO.** OALJ Case No: 2014 TLC 9 (ETA Case No: H-300- 13325-475069), and **GEORGE STOLTZ (STOLTZ LAND AND CATTLE CO)**, OALJ Case No: 2014 TLC 10 (ETA Case No: H-300-13340-772175), and **SANTANA RANCH (ROBERT DIXON)** OALJ Case No: 2014 TLC 11 (ETA Case No: H-300- 13331-262707), and **5 L RANCH CORP.** OALJ Case No: 2014 TLC 14 (ETA Case No: H-300-13351-400078), and **MCCOY CATTLE, LLC** OALJ Case No: 2014 TLC 16 (ETA Case No: H-300-13357-517591)**,** Employers Certifying Officer Mr. John Rotterman, Before Richard T. Stansell-Gamm, Administrative Law Judge**,** January 2014.

**Argenis Cortes, Carmel Smith and Ceham Mohamed on behalf of themselves and other employees similarly situated, v. Foot Locker, Inc.**, 06 Civ. 1046 (AKH), February 2014.

**Ronda L. Davis, et. al. v. The District of Columbia Child and Family Services Agency, et. al.,** C.A. No. 10-1564 (BJR), July 2014.

**Deanna Lewis-Bennett v. Booz Allen Hamilton, Inc.,** Case No. 1:2014cv00663, Virginia Eastern District Court, October 2014.

**Lugene A. Forte v. Liquidnet Holdings Inc., Seth Merrin**, Case No. 1:14-cv-02185, New York Southern District Court, October 2014.

*Vincent Balderrama v. Lockheed Martin Corp.*, No. 390843V, (Md. Cir. Ct. 2015) March 2015.

*Lemuel Bland, et. al. v. PNC BANK, N.A.* Civil Action No. 2:15-CV-1700-AJS, United States District Court, Western District of Pennsylvania, August 2016.

*Dianne Bucceri, Janet Charak, and Lisa Sanders, on behalf of themselves and all others similarly situated, v. Cumberland Farms, Inc.* Civil Action No. 1:15-CV-13955, United States District Court, District of Massachusetts, September 2016.

*Heather Webster and James Super, on behalf of themselves and those similarly situated v. Pure Fishing, Inc. and Kristi Forsythe*, Case No.: 13AE-CV02003, The Circuit Court of Platte County, Missouri, September 2016.

*Alex Reinig, et. al. v. RBS Citizens, N.A.* Civil Action No. 2:15-CV-01541-AJS, United States District Court, Western District of Pennsylvania, March 2017.

*Vivian Woods v. Eagle Technologies Inc., et. al.* Docket Number 05-267-P (CN), District of Columbia Commission of Human Rights, September 2017.

*U.S. Equal Opportunity Commission v. Performance Food Group, Inc.,* 13-CV-1712(MJG), United States District Court, District of Maryland, Baltimore Division, December 2017. (Supplemental Report, April 2018).

*Faith Forestry Services Inc. v. United States Department of Labor, et. al.,* Cause No. 1:17-CV-SA-DAS, United States District Court, Northern District of Mississippi, Aberdeen Division, January 2018.

*Scott Magee, individually and on behalf of all others similarly situated v. McDonald's Corporation and McDonalds USA, LLC*, Civil Action No. 16-CV-5652, United States District Court, Northern District of Illinois, May 2018.

*U.S. Equal Opportunity Commission v. Dolgencorp LLC*, Case No. 13-CV-4307, United States District Court, Northern District of Illinois, November 2018.

*Heather Williams v. Heinrich Chevrolet Corp.,* Civil Action No. 1:17-CV-00970-WMS, United States District Court, Western District of New York, November, 2018.

*Mark A. Hairston v. Royal Building Products, Inc.,* Civil Action No. 1:18-CV-00003, United States District Court, Western District of Virginia, Abingdon Division, January, 2019.

*Adriane R. Anderson-Strange v. National Railroad Passenger Corp.,* Case No. 17-CV-1859-RGA, United States District Court, District of Delaware, January, 2019.

**EXHIBIT 2**

**MATERIALS RELIED UPON**

## Complaints and Court Filings

Complaint and Prayer for Declaratory Judgement and Injunctive Relief, September 03, 2019

Employment Security Department's 2018 Agricultural Peak Employment Wage and Practices Survey, April 2019 (Exhibit 3 of the Complaint)

Declarations of Washington State Apple Growers

United States Department of Labor's ("DOL's") Employment and Training Administration ("ETA") Handbook 385 (Exhibit 2 of the Complaint)

Declaration of Sally W. Harmeling.


## Other Documents

Sharon L. Lohr (1999) Sampling Design and Analysis, Second Edition (Duxbury Press, Pacific Grove, California)

Kate Tilling (2001), "Capture-recapture methods—useful or misleading?", *International Journal of Epidemiology*, Volume 30, Issue 1, February 2001

Richard Neugebauer and Janet Wittes (1994), "Annotation: Voluntary and Involuntary Capture-Recapture Samples-Problems in the Estimation of Hidden and Elusive Populations", *American Journal of Public Health*, July 1994. Vol. 84. No. 7

Papoz L., Balkau B. , Lellouch J. (1996), and "Case Counting in Epidemiology: Limitations of Methods Based on Multiple Data Sources", *International Journal of Epidemiology*, Vol 25, No.3

Michael P. Battaglia, David Izrael, David C. Hoaglin, and Marvin R. Frankel, "Tips and Tricks for Raking Survey Data (aka Sample Balancing)," American Association for Public Opinion Research

Rivest, Louis-Paul, and Sophie Baillargeon. "Applications and extensions of Chao's moment estimator for the size of a closed population." Biometrics 63.4 (2007): 999-1006

Baillargeon, Sophie, and Louis-Paul Rivest. "Rcapture: loglinear models for capture-recapture in R." *Journal of Statistical Software* 19.5 (2007): 1-31.

United States Department of Agriculture ("USDA") 2017 Farm Labor Survey, November 15, 2018

Tom Karst. "Washington apple crop predicted at 137.3 million boxes." The Packer. August 7, 2019. www.thepacker.com

"Apple harvest forecast." Wenatchee Business Journal. June 2, 2019. www.ncwbusiness.com

"2019 Washington apple harvest predicted to be 137.3 million boxes." Fruit Growers News. August 7, 2019. www.fruitgrowersnews.com

"Apple Fun Facts." Washington Apple Commission. 2019. www.bestapples.com/resources-teachers-corner/fun-facts/

# CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2019. I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System. Notice of this filing will be sent to the parties listed below by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Rudolf J. Verschoor
Vanessa R. Waldref
Assistant United States Attorney
PO Box 1494
Spokane, WA 99210-1494
Email:   rudy.j.verschoor@usdoj.gov
          Vanessa.R.Waldref@usdoj.gov

DATED the 27th day of September, 2019.

By s/Sally W. Harmeling
SALLY W. HARMELING, WSBA No. 49457
JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
2600 Chester Kimm Road
P.O. Box 1688
Wenatchee, WA  98807-1688
Telephone:  509-662-3685
Fax:  509-662-2452
Email: SallyW@JDSALaw.com

Attorneys for Plaintiffs Evans Fruit Co., Inc.; WGE Holdings, LLC; McDougall Family Farming, Inc.; McDougall & Sons, Inc.; Double S Orchards, LLC; Columbia Fruit Packers, Inc.; Columbia Orchard Management, Inc.; and Wade & Wade, LLC

CERTIFICATE OF SERVICE

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
Attorneys at Law
(509) 662-3685 / FAX (509) 662-2452
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA  98807-1688

47B7459